(86 South. 552)

No. 24260.

### STATE v. WARD.

(Nov. 3, 1920.)

*(Syllabus by Editorial Staff.)*

1. Burglary ⚖20, 23—Information for burglarizing railroad car held sufficient.

An information charging that defendant "willfully, feloniously, and burglariously did break and enter in the nighttime of said day a railroad car, commonly called box car, the property of the V. S. & P. Ry. Co., with the intent the goods and chattels in said car then and there being feloniously to steal, take, and carry away," *held* sufficient as against claim that state should have set forth the number of the railroad car as well as the kind and brand of canned goods charged to have been stolen therefrom, especially where accused was acquitted of the count of larceny.

2. Burglary ⚖2—Common-law definition.

Burglary, at common law, is the breaking and entering the dwelling house of another in the night, with intent to commit some felony within the same, whether the felonious intent be executed or not.

3. Criminal law ⚖881(2)—Verdict in prosecution for breaking and entering box car not responsive to charge.

In a prosecution under Act No. 47 of 1890 for breaking and entering a railroad car in the nighttime, a verdict, "We, the jury, find the prisoner guilty of burglary in the daytime," was not responsive to the charge.

O'Niell, J., dissenting.

Appeal from Second Judicial District Court, Parish of Bossier; John N. Sandlin, Judge.

Fletcher Ward was convicted of burglary, and appeals. Verdict and sentence annulled, and accused ordered discharged.

Murff & Mabry, of Shreveport, for appellant.

A. V. Coco, Atty, Gen., and Harmon C. Drew, Dist. Atty., of Minden (T. S. Walmsley, of New Orleans, of counsel), for the State.

DAWKINS, J. Defendant was charged in a bill of information as follows:

" * * * Did then and there, in the peace of God and the state then and there being, willfully, feloniously, and burglariously, did break and enter in the nighttime of said day a railroad car, commonly called box car, the property of the Vicksburg, Shreveport & Pacific Railway Company, with the intent then and there the goods and chattels in said car then and there being feloniously to steal, take, and carry away."

And in a second count defendant was charged with the larceny of one box of canned goods of the value of $35, the property of said railway company, contained in the car at the time.

The jury returned a verdict as follows:

"We, the jury, find the prisoner guilty of burglary in the daytime."

The court having sentenced the defendant to serve not less than two nor more than five years in the state penitentiary, he prosecutes this appeal, and relies for relief upon two bills of exception:

### Bill of Exception No. 1.

[1] In this bill defendant complains of the refusal of the lower court to compel the state to set forth the number of the railroad car charged to have been burglarized, as well as the kind and brand of canned goods charged to have been stolen therefrom.

While we think that the charge might have been more specific as to these matters, at the same time we are of the opinion that it was sufficient to enable the accused to plead, especially since he has been acquitted of the count of larceny.

### Bill of Exception No. 2.

This bill was reserved to the overruling by the judge of a motion in arrest of judgment in which it was contended that the verdict was not responsive to the charge.

The law under which defendant was charged is Act No. 47 of 1890, which reads as follows:

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that, whoever with intent to commit any crime or misdemeanor shall in the nighttime break and enter any steamboat, or other vessel or railroad car or break any seal thereof, or having with such intent entered, shall in the nighttime break any such steamboat, vessel or railroad car or break any seal thereof, and any person present aiding, assisting or consenting in any such breaking or entering or accessory thereto before the fact by counseling, hiring or procuring such breaking or entering to be committed shall on conviction suffer imprisonment at hard labor for not exceeding ten years.

"Sec. 2. Be it further enacted, etc., that, whoever with intent to commit any crime or misdemeanor shall in the nighttime enter without breaking or in the daytime break and enter any steamboat or other vessel or railroad car or break any seal thereof, and any person present aiding or abetting, assisting or consenting in any such breaking or entering or accessory thereto before the fact by counseling, hiring or procuring such breaking or entering to be committed, shall on conviction thereof be imprisoned not exceeding five years, and with or without hard labor at the discretion of the court.

"Sec. 8. Be it further enacted, etc., that whoever shall willfully throw any missile or shoot with any firearm at any steamboat or other vessel or railroad train, engine, tender or car, or at any human being thereon, and any person aiding, procuring, advising or accessory before the fact in such throwing or shooting shall on conviction thereof be punished by a fine not exceeding one thousand dollars or imprisoned not exceeding two years and with or without hard labor at the discretion of the court."

Burglary was denounced in the original Crimes Act of May 4, 1805 (1 Martin's Dig. p. 736), in section 5 thereof, as follows:

That "every person who shall commit the crime of burglary, and be thereof convicted, shall be publicly whipped, and shall suffer imprisonment at hard labor not less than ten or more than twenty years."

By section 33 of that statute (2 Martin's Dig. p. 244, § 24) all crimes therein enumerated were to be taken and construed according to the common law of England; hence it was to that source, so long as that statute endured, that we had to look for a definition of burglary. However, in Act No. 120 of 1855 (being a statute relative to criminal offenses generally) the Legislature, under the head of "Offenses Against Habitations." which included arson and burglary, beginning with section 50 and continuing to and including section 55, specifically defined and described the different kinds of burglary, fixing separate, distinct, and varying penalties therefor. Practically the same provisions were incorporated in the Revised Statutes of 1870, beginning with section 850 and running down to section 854. Since then these various provisions have been amended from time to time by special enactments.

Under those sections of the Revised Stat-

utes there are numerous degrees of punishment, depending upon whether the building burglarized was a dwelling or other structure, and also depending upon whether or not the accused was armed or unarmed, or whether the offense was .committed in ·the day or at night.

So that whereas under the original Crimes Act, burglary had a well-defined meaning, which was to be found in the English common law, as our law now stands, that term, when used without being accompanied by some of the descriptive circumstances enumerated in the various sections of the Revised Statutes, might mean any one of them, and the court, in passing sentence, would not know under which one the penalty should be imposed.

[2] According to the common law, burglary was and is defined as follows:

"Burglary, at common law, is the breaking and entering the dwelling house of another in the night, with intent to commit some felony within the same, whether the felonious intent be executed or not." Wharton's Criminal Law, vol. 2 (7th Ed.) p. 302, § 1531; 1 Rus. on Crimes (6th Ann. Ed.) 786; 4 Blackstone's Com. 227; Rex v. Hanfon, 1 Root (Conn.) 59; Com. v. Newell, 7 Mass. 247.

"The breaking and entering the house of another in the nighttime with intent to commit a felony therein, whether the felony be actually committed or not." Black's Law Dic. def. Burglary.

Hence, if that definition were to be considered in the present case, the verdict would not be responsive to the charge, for the reason that the defendant is not charged with breaking and entering a dwelling or any other kind of house, but with breaking and entering a railroad box car. On the other hand, if we are to depend upon any statutory definition of burglary, where is it to be found?

As an indication that the Legislature did not consider a railroad car within the category of a structure which was covered by the other provisions of the law, that body passed Act 47 of 1890, specially denouncing the crime of breaking and entering that species of property. The act last mentioned, for the offense, when committed by breaking and entering in the nighttime, carries a penalty of imprisonment at hard labor not exceeding ten years; while, when committed in the nighttime without breaking or in daytime by breaking, it provides a penalty of not exceeding five years with or without hard labor, and in the third section denounces the throwing or shooting at any such property as a misdemeanor, to be punished by fine and imprisonment, not exceeding $1,000 and two years, respectively, at the discretion of the court.

The Legislature of this state has never adopted any definition of burglary, save and except to the extent that the crime was denounced by its name in the act of 1805, and carried with it the common-law definition as above pointed out, and which we find does not cover the act charged in the present case; for the descriptions or definitions contained in the Revised Statutes do not meet and are not equivalent to the common-law definition of burglary.

[3] We are therefore compelled to conclude that the verdict in this case does not respond to the charge made in the bill, and for that reason the judgment and sentence must be set aside. State v. Evans, 49 La. Ann. 329, 21 South. 546.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the verdict and sentence in this case be, and the same are hereby, annulled and set aside, and accused ordered discharged.

O'NIELL, J., dissents.