(120 So. 33)

No. 29442.

**STATE v. BARBER et al.**

Jan. 2, 1929.

Rehearing Denied Jan. 28, 1929.

A. D. Flowers, of Jena, and Moss & Moss, of Winnfield, for appellants.

Percy Saint, Atty. Gen., and Harry Fuller, Dist. Atty., of Winnfield (Stubbs & Thompson, of Monroe, of counsel), and E. R. Schowalter, Asst. Atty. Gen., for the State.

O'NIELL, C. J. The defendants have appealed from a conviction and sentence for the crime of burglary. The indictment, specifically, was that they had feloniously broken and entered the store and warehouse of the Louisiana Central Lumber Company, in the nighttime, with intent to steal. In another count in the indictment the defendants were charged with larceny of certain merchandise in the store at the time; but a nolle prosequi was entered on the charge of larceny before the trial. Both defendants were convicted of the crime of entering in the

nighttime, without breaking, with intent to steal. There are nine bills of exception in the record.

█ The first bill relates to a ruling ·of the judge, sustaining an objection to a question propounded to a witness for the state, on cross-examination. The witness was the superintendent of the commissary which the defendants were accused of breaking and entering, and, in the direct examination, he testified that the goods listed in the indictment were stolen from the commissary. The defendants were endeavoring to show that certain articles of merchandise which were found in their residences when searched, after the burglary, and which were identified as goods which had come from the commissary, could not have been stolen on the night of the burglary, because the goods were in the defendant's residences before the date of the burglary, and they claimed that they had bought the goods. The witness had testified, in the direct examination, that he had submitted to the grand jury a list of the articles found in the residence of the defendant Barber; and, on cross-examination, the witness was asked to examine the indictment and to state whether it showed that the articles, which he had submitted a list of to the grand jury, including a certain cap, were stolen on the night of the burglary. The objection to the question was that the indictment itself showed whether the goods that were found in Barber's residence were included in the list contained in the indictment. The objection was not well founded, because the indictment itself, without explanation, could not have shown whether the list of articles enumerated as having been stolen from the commissary included the articles that were found in the possession of either of the defendants after the burglary. It is said in the statement per curiam, and is conceded, that the testimony showed that the goods that were found in the possession of the defendants after the ˄ burglary were not stolen from the commissary on the night of the burglary. There is another statement per curiam, however, which makes the bill of exceptions worthless; that is, that the witness was afterwards permitted to testify, and did testify, that the articles found in Barber's residence after the burglary were not stolen from the commissary on the night of the burglary. Therefore no harm was done by the original ruling which, for the time, sustained the objection.

█ The second bill of exceptions was reserved to a refusal of the judge to have the answer of the witness (referred to in the first bill) taken down by the clerk to be made a part of the bill of exceptions, as provided by Act 113 of 1896, p. 162. As the first bill of exceptions was made worthless by subsequent events, the refusal of the judge to have the answer of the witness taken down and made ·a part of the bill is a matter of no importance.

██ The third bill was reserved to the overruling of an objection to a question propounded by the district attorney to the wife of the defendant Day, while she was on crossexamination, as a witness for her husband. She had testified that the goods found in her residence had been bought at different times previous to the burglary, and that none of them had been brought home after the burglary. · On cross-examination she was asked how much her husband's salary was and what the household expenses amounted to; the purpose of the inquiry being to show that it was not likely that her husband would have bought such a supply of goods as was found in his house after the burglary. The only objection urged was that the inquiry had nothing to do with the testimony which the witness had given for the defense. Our opinion is that the inquiry into the financial ability of the defendant to buy such a supply of goods as was found in his house was relevant to the testimony of the witness that the de-

fendant had bought the goods. It appears from the bill of exceptions that the only question that was objected to specifically was as to how much the defendant's house rent was. The answer was not unfavorable, for the witness replied that she thought the rent was only $7 per month. The bill of exceptions is not well founded.

■■ The fourth bill was reserved to the overruling of an objection to certain testimony given by a state's witness named Dunn. He was asked by the district attorney whether he had ever seen the defendant Day in the commissary of the Louisiana Central Lumber Company at night, after the store had been closed. The attorneys for the defendants objected to the question on the ground that its purpose was to prove that the defendant Day was in the commissary one night, after it had been closed, on an occasion long before the date of the burglary; and that such evidence was not only irrelevant, but would be very prejudicial to the defendant Day, by casting a suspicion that he had committed, or attempted to commit, a crime other than that for which he was on trial. The objection being overruled, the witness answered that, one night about a year and four months before the burglary, he went to the store to get a tire patch for his automobile, and, although the store was closed, he saw the defendant Day inside, crossing from the grocery side to the dry-goods side of the store. Day was then employed as night watchman for the Louisiana Central Lumber Company, and continued to hold the position until arrested on this charge of burglary. It was not a part of his duty to go inside of the store, and he was not supposed to have a key to it. The evidence against the defendants was only circumstantial. As a general rule, evidence tending to prove that the defendant in a criminal prosecution committed a crime other than that for which he is being tried is irrelevant, and

therefore inadmissible; and the rule should be enforced strictly, because of the prejudicial effect and injustice of introducing such evidence when it is irrelevant. But, when such evidence is relevant to an issue in the case on trial, it is admissible, notwithstanding its injurious effect. The only question to be determined when such evidence is offered is whether it is relevant to an issue in the case on trial. In this instance the evidence was relevant, because it tended to prove that the defendant Day, who was the night watchman for the Louisiana Central Lumber Company, had a key or other means of entering the commissary after it was closed by those whose duty it was to close and lock the doors at the end of the day's business. The store was in the front and the warehouse in the rear end of the building, and the evidence showed that the rear door of the warehouse was opened from the inside, and that the door between the warehouse and the store was also opened. The inference was that the burglar or burglars had first entered through the front door of the store; for the evidence showed that that door was locked by the storekeeper at the end of the day's business and that all other doors and the windows were fastened from the inside. The testimony of the witness Dunn tended to prove that the defendant Day had access to the store after it was closed for the day; which was a relevant circumstance in the case. When the judge overruled the objection to the testimony, he instructed the jury that the evidence was not to be considered as tending to prove that the defendant Day had previously committed, or attempted to commit, an offense, but was to be considered by the jury only as a circumstance in the case—the case being dependent upon circumstantial evidence. We agree with the judge that the evidence was admissible as one of the relevant circumstances.

■ The fifth bill of exceptions was re-

served to the statement of the judge to the jury that the testimony of the witness Dunn was to be considered by the jury as a circumstance in the case. When the defendants' attorneys protested against the judge's statement, the judge repeated to the jury that he intended to instruct them that the testimony was admitted merely as a circumstance in the case, and for no other purpose; to which repetition the attorneys again objected, on the ground that the judge was emphasizing the evidence as an important circumstance in the case. It does not appear to us that the judge's instruction had a tendency to impress upon the jury the importance of the testimony of the witness Dunn. On the contrary, the instruction was intended merely to impress upon the jury that they should not allow the evidence to be unduly prejudicial to the defendant Day, but should consider it only in so far as it was relevant to the crime for which the defendants were then being tried. This bill of exceptions, therefore, is not well founded.

■ The sixth bill also has reference to the testimony of the witness Dunn. After he had testified that he had seen the defendant Day in the commissary that night about a year and four months before the burglary, the district attorney asked the witness how he had recognized Day, and what was Day doing in the store. The attorneys for the defendants repeated the objection referred to in the fourth bill of exceptions, and added that the question called for an opinion of the witness. He answered that he saw Day coming from the grocery side to the dry goods side of the store, but did not see him doing anything else. The witness did not express an opinion as to whether the man whom he saw in the store was Day, or as to what the man was doing at the time. On the contrary, as the witness testified to what he saw, we assume that the store was lighted and had a glass door or window, for it is not dis-

puted that the witness could have seen a person in the store. The objection to the testimony was not well founded.

■ The seventh bill of exceptions was reserved to a part of the judge's charge to the jury, and embodies also a complaint that the verdict was not responsive to the indictment, and was invalid, both in form and in substance. The latter complaint—that the verdict was invalid—was first made in a motion in arrest of judgment, and will be considered in connection with the ninth bill of exceptions. The part of the judge's charge that was objected to was the instruction that, if the evidence warranted it, the jury might find the defendants, or either of them, guilty of the crime of entering in the nighttime, without breaking, with intent to steal. It is contended that the instruction was improper because burglary committed by entering without breaking, and burglary committed by breaking, and entering, are denounced by different statutes. In support of the argument, the appellants cite State v. Ward, 147 La. 1083, 86 So. 552, where it was held that, in a prosecution for the crime of breaking and entering a railroad car in the nighttime, a verdict of "guilty of burglary in the daytime" was not responsive. The decision was founded upon the use of the word "burglary" instead of the term "breaking and entering," and is therefore not appropriate to this case. It is well settled that, when an accusation, as defined in an indictment, includes within its language an accusation of a less serious crime, a verdict convicting the defendant of the less serious crime is responsive to the indictment. A better illustration could not be found than that an accusation of entering without breaking is included in an accusation of breaking and entering. It appears from the statements per curiam that, although the evidence for the state showed that the front door of the store was locked, and that the other openings were fastened from the inside

on the night of the burglary, there was some evidence to the contrary. Therefore, the judge's charge that the jury might find the defendants, or either of them, guilty of the crime of entering without breaking, was appropriate.

The eighth bill of exceptions was reserved to the overruling of a motion for a new trial, the allegations of which motion were only repetitions of the complaints which we have already disposed of.

The ninth bill was reserved to the overruling of a motion in arrest of judgment, founded upon the contention that the verdict was invalid, both in form and in substance. It was written thus: "We The Jury Render Verdict, Guilty of Entering In the Nighttime Without Breaking With Entent to Steal." The orthography might have been better—for the clerk of court did improve it in recording the verdict—but the language and style employed by the foreman of the jury left no doubt that he intended to say, "Guilty of entering in the nighttime, without breaking, with intent to steal." The verdict, therefore, as written, being not ambiguous, was valid as to form. The complaint with regard to the substance is, first, that the jury failed to say whether both or only one of the defendants, and if only one, which one, was found guilty; and, second, that the jury failed to designate the place that was entered. It appears that the judge, in charging the jury on the three verdicts, any one of which they might render for or against both or either of the defendants, enumerated them thus: First, guilty as charged; second, guilty of entering in the nighttime, without breaking, with intent to steal; and, third, not guilty. The judge also instructed the jury that, if they found one verdict for or against one of the defendants and another verdict for or against the other defendant, they should name each defendant in connection with the verdict rendered for or against him. The jury, after deliberating

for a while, returned into court with the verdict: "We render verdict on Number Two as to both defendants according to law." The jury's intention, manifestly, was to render the verdict which the judge had designated as the second which they might render; namely, guilty of entering in the nighttime, without breaking, with intent to steal. The judge, very properly, preferring that the jury should write their verdict in full instead of designating it by number, instructed them again on each of the three verdicts that would be appropriate, and sent them back to their room for further proceedings. They returned later with the verdict which is now complained of. After the verdict was recorded, the jury was polled, at the request of the attorneys for the defendants, and every juror except one answered that the verdict as read aloud was his verdict. There is therefore no doubt that the verdict was rendered against both of the defendants. Under the judge's instructions, it was not necessary for the jury to name the defendants in the verdict, if the same verdict was intended to be for or against both of them. And it was, of course, not necessary for the jury to designate in the verdict the building that was entered—not any more so than to repeat any other of the details of the indictment.

Our conclusion is that the verdict is valid, but our attention is directed to the fact that the sentence was not imposed according to law. The judge imposed upon each defendant an indeterminate sentence of imprisonment in the penitentiary for a term not less than two nor more than three years. The only authority in law for imposing an indeterminate sentence is the Act 222 of 1926, p. 358, which expressly excepts from its application, among other crimes excepted, the crime of burglary. The statute, as printed, declares that, when an indeterminate sentence is imposed, the minimum term of imprisonment shall not exceed two-thirds of the maxi-

mum. We are informed that this is a misprint, and that the statute, as enacted, provides that, when an indeterminate sentence is imposed, the minimum term of imprisonment shall not exceed one-third of the maximum. In this case, however, there is no authority for imposing an indeterminate sentence; and, as the defendants, in their brief, demand that the sentence, if imposed at all, should be for a fixed term, we must remand the case for the judge to sentence the defendants according to law.

The verdict is declared valid and is affirmed, and the case is ordered remanded to the district court for the judge to sentence the defendants according to law.

THOMPSON, J., recused.