182 So. 559

**STATE v. GENDUSA.**

No. 34810.

May 30, 1938.

Rehearing Denied July 1, 1938.

Maurice R. Woulfe, George M. Brooks, and Fred A. Middleton, all of New Orleans, for appellant.

Gaston L. Porterie, Atty. Gen., and Charles A. Byrne, Dist. Atty., and Conrad Meyer, Jr., and George J. Gulotta, Asst. Dist. Attys., all of New Orleans, for the State.

ROGERS, Justice.

The Grand Jury for the Parish of Orleans returned an indictment against Peter Gendusa, a white man, and John Beecham, a negro man, reading as follows, viz.:

"The Grand Jurors of the State of Louisiana duly impaneled and sworn in and for the body of the Parish of Orleans, in the name and by the authority of said State, upon their oath, present that one Peter Gendusa and one John Beecham, each, late of the Parish of Orleans, on the seventeenth day of July in the year of our Lord, one thousand nine hundred thirty seven with force and arms in the Parish of Orleans aforesaid, and within the jurisdiction of the Criminal District Court for the Parish of Orleans did feloniously, wilfully and unlawfully enter number eleven thirty five (1135) Marais Street, this City, home of Thomas Dupont and Miss Jennie Dupont, in the night time, with intent to rob, steal and murder, armed with dangerous weapons, did actually assault Thomas Dupont and Miss Jennie Dupont, two persons lawfully therein; contrary to the form of Statute of the State of Louisiana in such cases made and provided and against the peace and dignity of the same."

The crime intended to be charged is the crime denounced by Section 850 of the Revised Statutes as amended by Act 21 of 1926, which reads as follows, viz.:

"Whoever, with intent to kill, rob, steal, commit rape, or any other crime, shall, in the night time, break and enter, or having with such intent, entered in the night time, break a dwelling house, dwelling tent, or any other place used as a dwelling, any person being lawfully therein, and such offender being, at the time of such breaking or entering, armed with a dangerous weapon, or arming himself in such house or tent, or other place used as a dwelling, with a dangerous weapon, or committing actual assault upon any person lawfully being in such house or tent or other place used as a dwelling, any person present, aiding, assisting or consenting in such burglary, or accessory thereto before the fact, by counseling, hiring or procuring such burglary to be committed, on conviction, shall suffer the penalty of death."

On motion of Gendusa, a severance was granted. When the case of Gendusa was tried, Beecham was used by the state as a witness against the defendant. The state demanded a capital verdict and Gendusa was found guilty as charged.

Before trial, Gendusa filed a motion to quash, which was overruled. After the verdict and before sentence, the defendant filed motions for a new trial and in arrest of judgment. Both motions were denied. Counsel for defendant then presented the trial judge four bills of exception. The judge refused to sign one of the bills, assigning as his reason therefor that the exception was not reserved at the trial, the trial judge then in accordance with the verdict of the jury sentenced the defendant

to death. From the verdict and sentence defendant now prosecutes this appeal.

The three bills of exception that were reserved and allowed were taken to the overruling of defendant's motions to quash, for a new trial and in arrest. The motions to quash and in arrest contain substantially the same allegations. In both motions the invalidity of the indictment is alleged, on the grounds, first, that it is insufficient in law; second, that it fails to state or set out any offense known to the law; and, third, that it fails to state or set out any offense against section 850 of the Revised Statutes, under which it is sought to charge defendant, and fails to state or set out any averment which would bring the case under said section of the Revised Statutes. The motions to quash and in arrest also allege that the indictment is bad for duplicity, in that it attempts to charge separate and distinct offenses in the same count.

Defendant contends that the indictment in this case does not set forth an offense under Section 850 of the Revised Statutes, because it fails to allege a *breaking* either *before entry* or *after entry;* and, also, fails to state that the place entered is a dwelling house. Defendant further contends that the indictment is bad for duplicity, in that it charges two separate offenses, namely, the offense of entering in the night time without breaking as denounced in Section 854 of the Revised Statutes, as amended by Act No. 20 of 1926, and the offense of assault as denounced in Section 797 of the Revised Statutes.

We are not impressed with the soundness of defendant's contentions that the indict-

ment is invalid, because it alleges that the place entered was the home instead of the dwelling house of Thomas Dupont and Miss Jennie Dupont and because it charges two separate offenses in the same count. But we are impressed with the soundness of defendant's contention that the indictment does not charge an offense under Section 850 of the Revised Statutes, because it does not charge a breaking by defendant after he entered the dwelling house of the Duponts.

The acts designed to be punished as capital offenses by Section 850 of the Revised Statutes are breaking and entering or entering and then breaking in the night time with intent to commit a crime. The offense of entering in the night time without breaking is a distinct offense, punishable with imprisonment at hard labor, and is denounced by Section 854 of the Revised Statutes.

Burglary in this state is a statutory crime. There are four separate and distinct sections of the Revised Statutes denouncing burglaries. Section 850 makes it a capital crime to break and enter or to enter and then break a dwelling house under certain conditions.

The three other sections of the Revised Statutes denounce crimes of less magnitude. Section 851, as amended by Act No. 71 of 1926, makes it a crime, punishable by imprisonment, to break and enter or to enter and then break a dwelling house under conditions less grave than those set forth in the preceding section. Section 852, as amended by Act No. 72 of 1926, makes it a crime, punishable by imprisonment, to break and

enter or after entering to break any building other than a dwelling house with intent to commit a crime. Section 854 makes it a crime to enter without breaking in the night time or to break and enter in the day time any dwelling house, outhouse, ship, store, etc., with intent to commit a crime.

◼ Section 850 of the Revised Statutes, on which this prosecution is founded, does not make it a crime unless the offender breaks to enter the dwelling house, or if he enters the dwelling house through an opening that he breaks after making his entry. The breaking is the essence of the crime denounced by the statute. The crime is not committed until there has been a breaking followed by an entry or an entry followed by a breaking.

◼ Under the indictment in this case, the defendant is charged with entering, but not with breaking after entering. The offense charged is not a capital offense. The verdict of the jury, necessarily carrying with it the penalty of death, is not responsive to the indictment, and is therefore of no effect. Code Crim.Proc. art 405. The verdict being invalid, the sentence imposed thereunder is also invalid. Code Crim.Proc. art. 522.

Our conclusion is that the motion in arrest of judgment is well founded and that it should have been sustained.

◼ The object and effect of a motion in arrest of judgment, when well founded, is to strike down all proceedings previously had in the case. State v. McDonald, 178 La. 612, 152 So. 308.

For the reasons assigned, the verdict of the jury is set aside, the sentence of the court is annulled and this case is remanded to the district court for further proceedings consistent with the views herein expressed.

FOURNET, J., dissents, being of the opinion that when the indictment charges the defendant with entering one's dwelling in the night time armed with a dangerous weapon and there actually assaults one therein, the indictment is good under R.S. Sec. 850.

HIGGINS, J., dissents.

O'NIELL, C. J., concurs and hands down a separate opinion.

O'NIELL, Chief Justice (concurring in the decree).

My opinion is that, if the defendant had stood upon the indictment in this case, the verdict that was rendered against him, finding him "guilty as charged", would be a valid verdict for the crime of burglary defined in Section 854 of the Revised Statutes, as amended, as the entering of a dwelling house or any other house in the nighttime with intent to commit any crime. The penalty for that crime is imprisonment in the penitentiary for a term not exceeding five years, and a fine not exceeding $1,000. The only doubt that I have concerning the validity of the indictment for the crime of burglary defined in Section 854 of the Revised Statutes arises from the fact that the place which is alleged to have been entered by Gendusa is called the "home", instead of the "dwelling

house", of Thomas Dupont and Miss Jennie Dupont. I concur, however, in the decree setting aside the verdict, as well as the sentence, in this case, because the case was tried with the understanding on the part of the judge and the jury, and of the State and the defendant, that the prosecution was for the capital crime of burglary, defined in Section 850 of the Revised Statutes, as amended, and because the defendant is not demanding that he should be sentenced for the crime defined in Section 854 of the Revised Statutes, but, on the contrary, is demanding that the verdict, as well as the sentence, should be annulled. I agree, therefore, that the appropriate disposition to be made of this case is to set aside the verdict, as well as the sentence, and to remand the case, so that the district attorney may elect whether to retry the defendant under the present indictment, as for the crime defined in Section 854 of the Revised Statutes, or to enter a nolle prosequi, and let the grand jury determine whether the defendant shall be indicted for the crime defined in Section 850 of the Revised Statutes.

HIGGINS, Justice (dissenting).

I am of the opinion that the indictment sufficiently charged the defendant with the crime denounced by Revised Statute 850 (Art. 818 of the Louisiana Code of Crim. Procedure). While it is true, in the first part of the paragraph the phrase "break and enter" is used, it will be noted that thereafter only the word "enter" is used or the phrase "breaking or entering" is employed by the legislators in expressing their intent. This being written in the dis-

junctive, an indictment which charges an unlawful entry with force and arms sufficiently complies with the statute and is valid. There is no doubt in this case that the accused was fully apprised of the offense with which he was charged, as shown first by the fact that he was denied bail and, second, that he filed a motion to quash the indictment on the ground that in order to charge him with a capital offense, it was necessary for the State to allege that he broke into the dwelling.

Under the majority view, if an accused armed himself with deadly weapons and went to the dwelling house of his victim about 10 o'clock at night, with the intent to rob and kill him and commit burglary, and having found one of the doors open, boldly entered and struck down the occupant and the members of his family with his weapons, leaving them for dead and burglarized the house, but his victims did not die, he could only be convicted of entering a dwelling house at night time and subject to a penalty of five years in the State Penitentiary. (R.S. § 854—Act 20 of 1926, Art. 821 Louisiana Code of Criminal Procedure) On the other hand, if this same party entered under these same circumstances but had to open the bathroom door to find one of his victims, who had taken refuge there, he could be charged and convicted under R.S. § 850 and sentenced to death.

It is well established that in the commission of the crime of burglary that the mere opening of a screen or door which is not locked constitutes a sufficient breaking. So, in the instant case, I cannot agree that

breaking is the essence of the offense denounced by R.S. § 850, first, because of the wording of the Statute itself and, second, because such an interpretation leads to an absurd result and defeats the purpose of the Statute as amended. This was the view of the learned trial judge, who supported his opinion with pertinent authorities. State v. Cole, 161 La. 827, 109 So. 505; State v. Leonard, 162 La. 357, 110 So. 557; State v. Barber, 167 La. 635, 120 So. 33; State v. Anselm, 43 La.Ann. 195, 8 So. 583; State v. Kennedy, 8 Rob. 590; State v. Huntley, 25 Or. 349, 35 P. 1065; Rain v. State, 15 Ariz. 125, 137 P. 550; Pinson v. State, 91 Ark. 434, 121 S.W. 751, and People v. Barry, 94 Cal. 481, 29 P. 1026. These authorities point out that under the technical rules of the common law it was sacramental to allege "breaking" in the indictment charging burglary but that the Legislatures of different states have dispensed with this requirement where the entry into a dwelling house was unlawfully effected under circumstances such as those in the case now before us.

The sole complaint in connection with the bill of exception on which the majority opinion is based in setting aside the verdict of the jury and the sentence of the trial court is that the State failed to use the word "break" in the indictment. Conceding arguendo that the provisions of R.S. § 850, as amended by Act No. 21 of 1926 (Article 818 of the Louisiana Code of Criminal Procedure) require, as one of the elements of the crime, breaking into the dwelling, a view most favorable to the defendant, let us pass to a consideration of the question of whether or not the accused was prejudiced or deprived of a substantial right by the failure of the State to insert in the indictment the word "break". It is not contended by the accused that the district attorney on the trial of the case on the merits did not offer evidence to show that the accused and his accomplice broke into the dwelling of Thomas Dupont and his sister, Miss Jennie Dupont, in the night time, armed with dangerous weapons, with intent to commit burglary and feloniously assaulted these aged persons with a machete and an automobile tire tool, hacking them so badly about the face and head, leaving them permanently disabled and disfigured, after miraculously escaping death. But the contention is that the failure of the trial judge to sustain the motion to quash the indictment, which failed to contain the word "break" was fatal to the State's case and constituted reversible error. When the testimony of Thomas Dupont, Miss Jennie Dupont and John Beecham was taken on the point tending to prove that the accused and his co-conspirator broke into the dwelling through the side door, which had a screen door in addition to a regular door, which were closed, the defendant did not object to this testimony. Neither did the accused object to the judge's charge with reference to the crime denounced by the provisions of R.S. § 850, but was content to reiterate his objection to the indictment in a motion in arrest of judgment.

Article 557 of the Louisiana Code of Criminal Procedure reads:

"No judgment shall be set aside, or a new trial granted by any appellate court

of this State in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."

In Dart's Annotation of the Code of Criminal Procedure, in connection with this Article, we find:

"Appeals in criminal cases are not granted merely to test the correctness of the trial judge's rulings but only to rectify any injury caused thereby. State v. Pearson, 161 La. 332, 108 So. 661; State v. Cullens, 168 La. 976, 123 So. 645.

"The error must be so flagrant as to create a belief in the judicial mind that, but for its commission, a different and more favorable result to the accused would have been reached. State v. Gage, 161 La. 945, 109 So. 771. * * *

" 'It is not every error in the rulings of a judge during the progress of the trial that will justify the setting aside of the verdict. To warrant such action on the part of the court it must be so grave an error as to induce the belief that but for its commission a verdict favorable to the accused might have been returned.' State v. Hill, 39 La.Ann. 927, 3 So. 117, quoted in State v. Cole, 161 La. 827, 109 So. 505. * * *

"The trial court is better able to judge as to the relevancy and competency of evidence than the appellate court, and in order to warrant reversal on such ground it must be shown not only that the ruling was erroneous but that its admission was manifestly prejudicial to the accused. State v. Fletcher, 127 La. 602, 53 So. 877; State v. Campbell, 134 La. 828, 64 So. 765; State v. Morgan, 147 La. 205, 84 So. 589; State v. Pierfax, 158 La. 927, 105 So. 16; State v. Pearson, 161 La. 332, 108 So. 661; State v. Louviere, 165 La. 718, 115 So. 914; State v. Murphy, 166 La. 21, 116 So. 579; State v. Wilson, 168 La. 903, 123 So. 614; State v. Jones, 169 La. 291, 125 So. 127; State v. Colombo, 171 La. 475, 131 So. 464."

In Volume 1 of Marr's Criminal Jurisprudence of Louisiana (Second Edition) at page 481, it is stated:

"(g) The tendency of modern jurisprudence is to relax the strict technical rules of the common law and to look rather to substance than to form, to ideas rather than to words (h); but the rule is that a party charged with crime is entitled to be fairly informed of the nature and cause of the accusation against him * * *."

In the instant case, the accused knew that the State was holding him on a capital charge, first, because he was denied bail on that ground and (2) the motion to quash the indictment was predicated on the fact that the State was asking for a death penalty, and the record otherwise indicates that fact. Under the law, the indictment is a mere accusation, raises no presumption of guilt and has no probative

value. The jurors were so instructed by the trial judge. Therefore, the word "break" in the indictment in the event the State did not offer evidence to prove the breaking would not make out the State's case. But where the State offered evidence by three witnesses, tending to show that the accused and his accomplice broke into the dwelling and no objection was offered to this testimony, we fail to see where the rights of the accused were prejudiced or where he was denied a substantial right.

It is said that Article 557 of the Code of Criminal Procedure only applies to errors committed by the trial judge in misdirecting the jury or improperly admitting or rejecting evidence. This is not true, because the article expressly states that it applies to an "error of any matter of pleading or procedure." Where the judge improperly instructs the jury or improperly admits or rejects evidence, this Court has refused to set aside the verdict and sentence and grant a new trial unless the substantial rights of the accused were prejudiced. Of course, there is no way to accurately determine exactly what effect the misdirection of the jury by the trial judge or the admission or rejection of evidence might have had upon the minds of the jurors, yet in those instances we have undertaken to say whether or not the accused suffered the loss or prejudice of a substantial right in either granting or refusing to grant a new trial. In the instant case, it can be truthfully and accurately stated that the omission of the word "break" from the indictment did not have the slightest effect upon the minds of the jurors in arriving at their unanimous

verdict, because the indictment was never offered in evidence and the trial judge instructed the jurors that the indictment had no probative value as evidence.

Regardless of the point of view from which you consider the majority opinion, the final result is that the accused charged with a heinous and brutal crime, and who was unanimously found guilty by the jurors and a new trial denied him by the trial judge, is now granted a new trial on appeal solely and only on the ground that the State failed to use one word in the indictment, i. e., "break".

It is clear to my mind that this is the kind of technicality the legislators intended to cover when they wrote Article 557 of the Code of Criminal Procedure.

I respectfully dissent.

On Application for Rehearing.

PER CURIAM.

In the State's petition for a rehearing it is contended that the wording of Section 850 of the Revised Statutes, as amended by Act No. 21 of 1926, is such that it is not necessary that there should be both a breaking and an entering of the house,—but that a mere entering of an open house is sufficient,—if done in the aggravating circumstances described in the statute,—to constitute that grade of the crime of burglary for which the penalty is death. The statute declares, very plainly, that there must be a breaking and an entering of the house,—that is, a real case of burglary, and not merely an entering of an open house,—to constitute the capital

crime described in the statute. The statute declares:

"Whoever, with intent to kill, rob, steal, * * * shall, in the night time, break and enter, or, having with such intent, entered in the night time, break a dwelling house, * * * any person being lawfully therein, and such offender being, at the time of such breaking or entering, armed with a dangerous weapon, or arming himself in such house * * * with a dangerous weapon, or committing [an] actual assault upon any person lawfully being in such house, * * * on conviction, shall suffer the penalty of death."

It is argued that, if the Legislature had intended that there should be a breaking and an entering, instead of a mere entering of the house, to constitute the capital crime of burglary, the Legislature would have used the word "and" instead of the word "or", in the expression: "such offender being, at the time of such breaking or entering, armed with a dangerous weapon". If the Legislature had used the word "and", instead of the word "or", in the expression which we have quoted, the Legislature would have required,—in order to constitute the capital crime,—that the offender should be armed with a dangerous weapon at the time of *both* the breaking *and* the entering of the house. On the contrary, there is a much better style of expression in saying "such offender being, at the time of such breaking *or* entering, armed with a dangerous weapon", than there would be in saying "such offender being, at the time of such breaking *and* entering, armed with a dangerous weapon". The declaration that the offender must be armed with a dangerous weapon at the time of the breaking *or* entering of the house,—to be guilty of the capital crime,—does not affect in any way the declaration that there must be a breaking *and* an entering of the house,—to constitute the capital crime of burglary, as defined in the statute.

If the Legislature had intended, by Section 850 of the Revised Statutes, to make it a capital crime for a person to enter a dwelling house in the night time, without breaking, etc., the Legislature would have said: "Whoever, with intent to kill, rob, steal, * * * shall, in the night time enter," etc. It would have been inappropriate to say, "Whoever shall break *or* enter", etc.; because that would mean that the crime of burglary might be committed either by breaking without entering or by entering without breaking. That is illustrated by referring to Section 854 of the Revised Statutes, as amended by Act No. 20 of 1926,— viz.:

"Section 854. Whoever, with intent to kill, rob, steal, * * * shall, in the night time, enter without breaking, or in the day time, break and enter," etc.

Section 854 was enacted originally as Section 7 of the Act of March 20, 1818, p. 172, entitled "An Act Supplementary to an Act for the Punishment of Crimes and Misdemeanors", and was retained as Section 55 in Act No. 120 of 1855, entitled "An Act Relative to Crimes and Offenses". In the French text of Section 7 of the Act of March 20, 1818, the expression, translated substantially, is "If any person, * * * shall enter in

the nighttime without breaking, or in the daytime with breaking," etc. But, by an error in the translation, the expression, "or in the daytime [enter] with breaking," was translated thus: "or in the daytime break or enter." The intention was to say: "or in the daytime break and enter." That was observed in the case of State v. Stephens, 150 La. 944, 91 So. 349, 23 A.L.R. 286, where the defendant was convicted under an indictment charging that he did feloniously enter a store in the daytime with intent to steal a pair of shoes of the value of $7.50. The court held that, as a matter of common sense, the words "or in the daytime break or enter" should read "or in the daytime break and enter".

No principal of law is better settled than that an indictment for a statutory crime—especially an indictment for a capital offense—is not a valid indictment for the crime that is intended to be charged, unless every essential element of the crime, as defined in the statute, is alleged in the indictment. Every fact that must be proved in order to convict the party accused must be alleged in the indictment. If the indictment is for the crime of entering in the night time,—as provided for in Section 854 of the Revised Statutes,—it is necessary only to allege that the party accused entered the house; but, if the indictment is for breaking and entering in the daytime, it is necessary to allege that the party accused broke and entered the house. It is not sufficient in that case to allege merely that the party accused entered the house, etc. In Marr's Criminal Jurisprudence, 2nd Ed., Vol. 1, p. 480, Sec. 323, it is said:

"In all prosecutions the utmost certainty and distinctness of pleading are required (a); nothing can be taken by intendment; every essential ingredient of the crime must be set forth (b); that is to say, whatever must be proved on the trial must be alleged in the indictment (c); and when our statute has adopted a common-law offense and incorporated it into our laws, it is necessary in the indictment to make use of the words which technically charge the offense at common law;" etc.

In Wharton's Criminal Law, 12th Ed., Vol. 1, p. 1275, Sec. 974, under the Caption "Burglary", it is said:

"There must be an actual or constructive breaking into the house. Not every entrance into the house by a trespasser is a breaking. Should a door or other apperture be partially or wholly open, and the thief enter, this is not breaking".

And, on page 1315, in Section 1030, it is said:

"The indictment charging burglary must allege every fact necessary to constitute the offense, including the time and place where committed, and must also set forth every circumstance necessary to an exact description of the offense, as defined in the statute creating it."

In the case of State v. Garon et al., 158 La. 1014, 105 So. 47, the defendants were prosecuted and convicted under a bill of information charging that they had broken and entered the garage of Charles Frohn in the nighttime, with the felonious intent to steal and rob. They filed a motion in ar-

rest of judgment, contending· that a garage was not one of the kinds of buildings mentioned in the statute which they were accused of violating. The statute, of which the bill of information was intended to charge a violation, is Section 852 of the Revised Statutes, as amended by Act No. 72 of 1926,—viz:

"Section 852. Whoever, with intent to rob, steal, * * * shall in the night time break and enter into any shop, store, * * * on conviction, shall suffer imprisonment," etc.

The judge of the district court overruled the motion in arrest of judgment, but, on appeal, this court sustained the motion, set aside the verdict and sentence, pronounced the bill of information invalid, and ordered the defendants discharged, on the ground that a "garage" was not one of the kinds of buildings mentioned in the statute. It was argued on behalf of the State that the "garage" referred to in the bill of information was in fact also a "shop", because the evidence showed that the garage in question was an establishment where automobiles were repaired and where accessories were sold. But the court said (page 49):

"The word [garage] should not have been used in the bill of information as a substitute for the word 'shop,' for it is not the equivalent of the latter, nor does it necessarily include the meaning of that word. But counsel for the state urge that the evidence adduced on the trial of the case shows that the garage, in this instance, was a place for the repair of automobiles and the purchase of their accessories. *It is sufficient, however, to say, in disposing of this con-*

*tention, that it was not enough for the evidence, with which we are not even concerned in passing on the motion in arrest, to have so shown, but the bill of information should have alleged that the place broken into was a shop, or used words unequivocally conveying the meaning that it was."* (We supplied the italics).

In the case of State v. McDonald et al., 178 La. 612, 152 So. 308, the defendants were prosecuted under a bill of information charging that they "unlawfully did·break and enter, in the night time, the American Hat Company, located at 810 Texas Avenue, City of Shreveport, Louisiana, with the intent to commit larceny". The jury found the defendants guilty of entering in the nighttime without breaking. They were accused of the crime described in Section 852 and were convicted of the crime described in Section 854 of the Revised Statutes. They filed a motion in arrest of judgment, complaining that it was not alleged in the bill of information that the establishment or place of business of the American Hat Company, located at 810 Texas Avenue, etc., was the "shop", "store", or "office", of the American Hat Company. The judge overruled the motion in arrest, but, on appeal, the judgment was reversed, the verdict and sentence were set aside, and the defendants were ordered discharged. The court said:

"In the recent case of State v. Williams, 173 La. 1, 136 So. 68, 70, a similar objection was raised, and the author of the opinion said:

" 'We approach the consideration of these reasons impressed with the fact that penal laws must be strictly construed; that, in

Louisiana, all crimes are statutory, and the determination of what acts constitute crimes are purely legislative functions which cannot be delegated to, or exercised by, the judiciary.'

\* \* \* \* \* \*

"It is suggested that the clause 'located at 810 Texas Avenue, Shreveport, Louisiana,' which follows the words 'American Hat Company,' sufficiently describes a place or the premises burglarized. The suggestion is untenable. That clause merely locates the place where the 'American Hat Company' was doing business, and is not equivalent to a charge that defendants burglarized the premises or a house located at 810 Texas Avenue.

\* \* \* \* \* \*

"It is suggested that the defect in the information was cured by the verdict. That might be true if there had not been omitted from the indictment an 'essential averment.'

"Article 418 of the Code of Criminal Procedure reads as follows:

" 'All averments imperfectly stated in the indictment are cured by verdict, but the omission from the indictment of any essential averment constitutes an incurable defect.'

"There was omitted from the information in this case the 'essential averment' that defendants burglarized a building or structure. That omission was fatal, and the doctrine of 'aider by verdict' does not apply."

That is a complete answer to the suggestion made in the present case, that, under article 557 of the Code of Criminal Procedure, the verdict should not be set aside, or a new trial granted, because of such an "omission from the indictment" as there is in this case. This section of the Code declares:

"557. No judgment shall be set aside, or a new trial granted by any appellate court of this State, in any criminal case, on the grounds of misdirection of the jury or the improper admission or rejection of evidence, or as to error of any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right."

That must be read in connection with the declaration in article 418,— viz.: "All averments imperfectly stated in the indictment are cured by verdict, but the omission from the indictment of any essential averment constitutes an incurable defect." To convict a person of a capital crime under an indictment from which an essential averment is omitted constitutes a substantial violation of a constitutional right. It is provided in Section 9 of Article 1 of the Constitution that no person shall be held to answer for a capital crime unless on a presentment or an indictment by a grand jury. The same provision is made in the Fifth Amendment of the Constitution of the United States, U.S.C.A. Const.Amend. 5, with regard to "a capital, or otherwise infamous crime", triable in a federal court. It has been decided many

times that this provision in our State Constitution, that no person shall be held to answer for a capital crime unless on a presentment or an indictment by a grand jury, means a valid presentment or indictment by a grand jury legally constituted.

In the case of State v. Pinsonat et al., 188 La. 334, 177 So. 67, the two defendants were indicted for murder. The indictment was worded not according to the short form, prescribed in articles 235 and 248 of the Code of Criminal Procedure, but according to the form prescribed in Section 1048 of the Revised Statutes, defining the crime of murder. The words used in the indictment, however, were that the defendants, William Pinsonat and John Beach "did feloniously, wilfully, unlawfully and of *his malice aforethought,* did kill and murder" etc. The judge of the district court sustained a motion to quash the indictment, on the ground that it should have been alleged that the murder was committed by the defendants of *their* malice aforethought. On appeal, the judgment was affirmed. The court conceded that the State's Attorney had the right to use the short form of indictment; but the court said:

"It is our opinion, therefore, that the State in the case at bar, having elected to use the form of indictment which is provided for in section 1048 of the Revised Statutes, must not only strictly adhere to the provisions of the statute, but is also bound by the decision of this court affecting the same, and, consequently, the indictment against the defendants stating the fact charged against them in the singular

instead of the plural is fatally defective and cannot be corrected by amendment."

In State v. Morris, 185 La. 1037, 171 So. 437, the defendant was indicted for murder, in Sabine Parish. The judge sustained a motion to quash the indictment because one of the members of the grand jury that indicted the defendant had moved his family to an adjoining parish—Natchitoches Parish—less than three months before he served as a member of the grand jury. He moved his family to Natchitoches Parish on December 26, 1935, and served on the grand jury in Sabine Parish in March, 1936. This court affirmed the ruling, and said that the fact that the grand juror returned to Sabine Parish and served as an election commissioner in the elections held in January and in March, 1936, was immaterial. The court cited several decisions on the requirement of a valid indictment for a capital crime, and quoted from the case of State v. Soileau, 173 La. 531, 138 So. 92,—thus (page 439):

"There can be no trial, conviction, or punishment for a crime without a formal and sufficient accusation. An indictment is a written accusation of a crime presented by a grand jury, and is the exclusive method prescribed for holding a person to answer for a capital offense. Const. 1921, art. 1, § 9."

In State v. Gunter, 188 La. 314, 177 So. 60, the defendant was indicted for murder, and moved to quash the indictment on the ground that one of the members of the grand jury that indicted him had a criminal charge pending against him at the time when he served on the grand jury. The

judge of the district court overruled the motion to quash; and the defendant was tried and convicted of manslaughter. On appeal, this court set aside the conviction and declared the indictment null. The charge against the grand juror was that of shooting into a dwelling house, and had been slumbering on the dead docket of the court for nearly thirty years,—and the grand juror had the absolute right to have a nolle prosequi entered,—when he served on the grand jury in Gunter's Case. The court cited, in support of its ruling that the indictment was null, Section 9, of Article 1 of the Constitution, and a long list of decisions by this court.

It is said that the trial judge was of the opinion that "breaking" was not an essential element in the definition of the capital crime of burglary, as denounced by Section 850 of the Revised Statutes, first, because of the wording of the statute itself, and, second, because such an interpretation of the statute would lead to an absurd result and defeat the purpose of the statute. And it is said that the judge supported his opinion by citing the following decisions, which are said to be pertinent,—viz.: State v. Cole, 161 La. 827, 109 So. 505; State v. Leonard, 162 La. 357, 110 So. 557; State v. Barber, 167 La. 635, 120 So. 33; State v. Anselm, 43 La.App. 195, 8 So. 583; State v. Kennedy, 8 Rob. 590; State v. Huntley, 25 Or. 349, 35 P. 1065; Summers v. State, 9 Tex.App. 396; Rain v. State, 15 Ariz. 125, 137 P. 550; Pinson v. State, 91 Ark. 434, 121 S.W. 751, and People v. Barry, 94 Cal. 481, 29 P. 1026.

We have examined the decisions cited, and have concluded that none of them is

contrary to the opinion which we have rendered in this case,—as we shall point out now.

In State v. Cole, 161 La. 827, 109 So. 505, the defendant, being the cashier of a bank, was convicted of the crime of assenting to the receipt of a deposit, while knowing that the bank was insolvent. The decision rendered in the case is not at all appropriate to the present case except that it was said in the case cited that, to set aside a conviction, the error would have to be so grave as to induce a belief that an acquittal might have resulted but for the error. The error referred to was that the indictment accused the defendant of receiving a deposit while knowing the bank to be insolvent, whereas the statute defined the crime as assenting to the receipt of a deposit knowing the bank to be insolvent. The court held that to say that the cashier received the deposit, knowing the bank to be insolvent, was the same as to say that he assented to the receipt of the deposit, knowing the bank to be insolvent.

In State v. Leonard, 162 La. 357, 110 So. 557, the defendant appealed from a conviction and sentence for the offense of possessing intoxicating liquors for beverage purposes. He filed a motion in arrest of judgment on the ground that the indictment did not set forth an offense under the Hood Law, Act No. 39 of 1921. He did not discuss the bill in his brief. This court assumed that his complaint was that he was accused of willfully, maliciously, and feloniously possessing the intoxicating liquor for beverage purposes. And the court decided that, although none of the words, "willfully", "maliciously", or "felo-

niously", appeared in Act No. 39 of 1921, their being in the indictment was mere surplusage, which should be disregarded, thereby leaving the offense sufficiently charged in the terms of the statute. It was in that connection that the court said that it was an elementary rule in criminal pleading that it was sufficient to charge a statutory crime in the words of the statute, or in words of similar import. The decision is not at all appropriate here.

In State v. Barber et al., 167 La. 635, 120 So. 33, the defendants were indicted for the crime of *breaking and entering* a store in the nighttime with intent to steal. They were convicted of the crime of entering the store in the nighttime, without breaking, with intent to steal. By way of a motion in arrest of judgment, the defendants contended that the verdict was not responsive to the indictment. In maintaining that the verdict was responsive to the indictment, we said (page 37):

"It is well settled that, when an accusation, as defined in an indictment, includes within its language an accusation of a less serious crime, a verdict convicting the defendant of the less serious crime is responsive to the indictment. A better illustration could not be found than that an accusation of entering without breaking is included in an accusation of breaking and entering."

There is nothing in that decision that is at all appropriate to the present case.

In State v. Anselm, 43 La.Ann. 195, 8 So. 583, it was charged in the bill of information that the defendant "did feloniously and burglariously break and enter

the store-house of Arthur Veltin with intent to steal," etc., but it was not alleged that the breaking and entering was done "in the day-time" or that it was done "in the night-time." The defendant, being convicted, filed a motion in arrest of judgment, contending that the bill of information was defective because it was not alleged that the breaking and entering was done in the daytime, or that it was done in the nighttime. The judge sustained the motion in arrest of judgment, and the State appealed. This court observed that the bill of information was written according to the provisions of Section 854 of the Revised Statutes, which denounced the crime of breaking and entering in the daytime, or entering without breaking in the nighttime. The court ruled that, inasmuch as the bill of information charged both breaking and entering, it was not necessary to say whether the crime was committed in the daytime or in the nighttime, although it would have been necessary to allege that the entering was done in the nighttime if the accusation had been that the defendant entered without breaking. The judgment sustaining the motion in arrest of judgment was set aside, and the verdict was declared valid. The decision is not at all appropriate to this case because, in the case cited, it was alleged in the bill of information that the defendant *broke and entered* the store.

In the case of State v. Kennedy, 8 Rob. 590, the defendant was convicted of murder, and, on appeal, a motion in arrest of judgment was sustained, and the verdict was set aside, because the time and place of the death of the person alleged to have

been murdered were not alleged sufficiently. There is nothing in the decision that is at all appropriate to the present case. We believe that the decision was cited through error.

In the Oregon case, State v. Huntley, 25 Or. 349, 35 P. 1065, the defendant was convicted of burglary, under an indictment charging that he did unlawfully and feloniously break and enter a dwelling-house in the nighttime, etc. On appeal, the only assignment of error was that the judge instructed the jury that, to constitute a breaking and entering, within the meaning of the statute, Section 1762 of Hill's Code, it was not necessary that the house should be demolished in any degree, and that any unlawful entry into a dwelling house where there was a human being at the time, and with the intent to commit a crime therein, would constitute a breaking within the meaning of the statute, even though the defendant might have gone in through an open door. The court found that the instruction given by the judge to the jury was according to Section 1762 of Hill's Code, which provides:

"Every unlawful entry of a dwelling-house, with intent to commit a crime therein, shall be deemed a breaking and entering of such dwelling-house within the meaning of section 1758."

In deciding the case the court said (page 1066):

"Under the statutes of this state the wrongful entry of a dwelling house with the intent to commit a crime therein, constitutes burglary, and, while it is proper, if not necessary, to charge in the indictment an actual breaking, it is sufficient on the trial to show that the entry was an unlawful one".

That decision is not appropriate to the case before us because we have no such statute in Louisiana as Section 1762 of Hill's Code, declaring that every unlawful entry of a dwelling-house, with intent to commit a crime therein shall be deemed a breaking and entering of the dwelling-house.

In the case of Summers v. State, 9 Tex.App. 396, the defendant was convicted under an indictment charging that he "did then and there feloniously, burglariously, and by force, break and enter into a certain house, there and then occupied and used by one James Johnson as a dwelling-house, with the intent" to steal, etc. The indictment was drawn according to article 704 of the Penal Code of Texas, which declares:

"The offense of 'burglary' is constituted by entering a house by force, threats or fraud, at night, or in like manner by entering a house during the day, and remaining concealed therein until night, with the intent, in either case, of committing a felony or the crime of theft."

It was held that the verdict was a valid conviction of the crime denounced by article 705 of the Penal Code, declaring that "he is also guilty of burglary who, with intent to commit a felony or theft, by breaking, enters a house in the day-time." There is nothing in the decision in that case that is at all appropriate to the present case.

In Rain v. State, 15 Ariz. 125, 137 P. 550, the defendant was convicted of burglary as defined in Section 418 of the Penal Code of Arizona, of 1901, declaring that any person who enters any dwelling-house, office, room, apartment, etc., with intent to commit grand or petit larceny or any felony, and any person who enters any outhouse or other building not above enumerated, with intent to commit any felony, is guilty of burglary. On appeal, the defendant assigned as error that the judge refused to give the requested charge to the jury that the bill of information charged that the defendant did willfully, feloniously, burglariously, and forcibly break and enter, etc. The court said that, if the law required a "breaking and entering" to be charged in the information in order to constitute the crime of burglary, the judge should have given the requested instruction to the jury, but that the law did not so define burglary, nor require such to be charged or proved. In view of Section 418 of the Penal Code of Arizona, 1901, there is nothing in the decision that is at all relevant to the present case.

The decision in Pinson v. State, 91 Ark. 434, 121 S.W. 751, was based upon a statute, Section 1603 of Kirby's Digest, providing that "burglary is the unlawful entering a house * * * in the night time, with the intent to commit a felony." It was held that the statute should prevail over the common-law definition of burglary, and hence, that it was not necessary that there should be a breaking and entering, or that the entering should be effected by fraud or deception; and

hence, that one who entered an open saloon with the purpose formed before or at the time of the entry to commit a felony was guilty of the crime defined in the statute. In view of the statute, the decision is not at all appropriate to the present case.

The case of People v. Barry, 94 Cal. 481, 29 P. 1026, was very much like the case of Pinson v. State, 91 Ark. 434, 121 S.W. 751, in that Barry violated a statute, Section 459 of the California Penal Code, providing that everyone who entered any house, room, or store, with intent to commit grand or petit larceny, or any felony, was guilty of burglary. It was held that the offense was complete when the entry was made with the intent to commit grand or petit larceny, or any felony, even though the entry of the store was through a public entrance and during business hours. The court said that the common-law crime of burglary and the statutory crime of burglary in California had but few elements in common, and that the plain language of the statute of California should control as to the acts which constituted the crime of burglary in that State. As we said of Pinson v. State of Arkansas, the decision in People v. Barry, in view of the local statute, is not at all appropriate to the present case.

Our re-examination of all of the law that has been cited in this case convinces us that the decision which we have rendered is correct. We must not allow the heinousness of the crime that was committed to divert our attention—unconsciously—from the questions of law in the

case,—just as a juror must not allow the heinousness of a crime to divert his attention from the question of guilt or innocence of the party accused. The fact that the jury in this case found the defendant guilty as charged does not mean that the jury found him guilty of *breaking* and entering. He was not charged with *breaking* and entering. According to the ruling of the judge it was not necessary for the evidence to show that there was a *breaking* and entering,—in order for the jury to find the defendant guilty as charged.

The petition for a rehearing is denied.

HIGGINS, Justice.

I respectfully dissent.

FOURNET, J., dissents.