275 So.2d 733 (1973)
STATE of Louisiana
v.
Louis Dan SMITH.
No. 53071.
Supreme Court of Louisiana.
March 8, 1973.
Murphy W. Bell, Public Defender, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Sp. Asst. Atty. Gen., Ossie Brown, Dist. Atty., Nathan Wilson, Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
Defendant, Louis Dan Smith, was charged by Bill of Information for the crime of armed robbery. He was tried by a jury, convicted and sentenced to serve ten (10) years in the state penitentiary. La.R.S. 14:64. On this appeal he urges four (4) bills of exceptions.
In our examination of the pleadings and proceedings below, following the submission of the case to us for review, we have found, ex proprio motu, the Bill of Information charging the armed robbery to be fatally defective.
The Bill of Information in the instant proceedings recites that Louis D. Smith, "* * * did violate R.S. 14:64 in that he robbed City National Bank at 7415 Airline Highway, Baton Rouge, while armed with a dangerous weapon . . .".
This crime was committed on or about December 13, 1971. The statute under which the accused was charged reads:
"Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. . ."
In holding that the Bill of Information does not adequately charge the offense denounced by La.R.S. 14:64, we based our conclusion upon the failure of the prosecution to allege the person robbed. Absent such a recital, the information is rendered violative of the accused's fundamental right to be "* * * informed of the nature and cause of the accusation against him * * *" as specified by Section 10 of Article 1 of the Louisiana Constitution (1921). See State v. Raby, 259 La. 909, 253 So.2d 370 (1970).
Not only does La.C.Cr.P. art. 465 require the naming of the victim in the short form indictment for armed robbery, but also art. 473 specifically requires the naming of the victim in murder, rape or battery which are illustrative of the many offenses in which the name is essential. Compare this with Art. 465 on the short form indictment for theft (R.S. 14:67) which does not require a recital of the victim. See also State v. Dozier, 258 La. 323, 246 So.2d 187 (1971) wherein this Court held that a recital *734 of the victim was a necessary element in an indictment attempting to charge aggravated assault.
Since the Bill of Information fails to charge a crime punishable under Louisiana law because of the omission of an essential ingredient of the offense sought to be charged, it is ordered quashed, and the defendant's conviction and sentence are set aside and the defendant is ordered discharged.
HAMLIN, C. J., and SUMMERS, J., dissent.
SANDERS, J., dissents with written reasons.
TATE, J., also assigns additional concurring reasons.
SANDERS, Justice (dissenting).
Armed robbery is the theft of anything of value from the person or from the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon. LSA-R.S. 14:64.
Article 465 of the Louisiana Code of Criminal Procedure provides that the crime may be charged in the following short form: "A. B., while armed with a dangerous weapon, robbed C. D."
The Bill of Information in the present case recites that Louis D. Smith ". . . did violate R.S. 14:64 in that he robbed City National Bank at 7415 Airline Highway, Baton Rouge, while armed with a dangerous weapon . . ."
In a hypertechnical ruling, the majority holds that the charge is insufficient because it fails to allege the person robbed.
I disagree. Quite clearly, City National Bank is used here in a figurative sense to mean "personnel of the City National Bank."[1] When thus construed, the Bill of Information is a substantial compliance with the statutory form. The charge is not fatally defective, though defendant upon proper motion would have been entitled to a bill of particulars giving the name of the specific employee victimized.[2]
Article 2 of the Louisiana Code of Criminal Procedure provides:
"The provisions of this Code are intended to provide for the just determination of criminal proceedings. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable delay."
In my opinion, the present decision violates both the letter and spirit of the Article. The defendant, himself, was not misled by the phrasing of the charge. He at no time complained of the adequacy of the Bill of Information.
Hypertechnical decisions of this type, upsetting convictions for serious crimes after guilt has been established, have produced a marked loss of public confidence in the courts during recent years. In my opinion, the cause of justice would be better served by upholding the charge.
For the reasons assigned, I respectfully dissent.
TATE, Justice (assigning additional concurring reasons).
My dissenting brethren have reason on their side, but against them is a long line of jurisprudence interpreting a provision of our state constitution. This firmly settled constitutional interpretation must be followed (as at least some of the majority do reluctantly) until it is overruled (as at *735 least some of the dissenting brethren do not wish to do).
Article I, Section 10 of our State Constitution provides: "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him; * * *."
This constitutional provision has until now been interpreted as requiring the indictment or information to state every essential fact of the offense with which charged. The indictment or information is regarded as the foundation of the prosecution and as the safeguard of the accused against being prosecuted for a non-crime or, on the contrary, against conduct so vaguely described as not to bar subsequent prosecutions (i. e., to undergo further jeopardy) for the same offense.
So fundamental has been regarded this foundation paper, that its validity will not be saved if the facts are supplemented by a bill of particulars or if, from the facts of the prosecution itself, any vagueness or insufficiency is dispelled. If the indictment or information is constitutionally invalid, the infirmity is not waived by the accused going to trial on it without objection, and, on appeal after conviction, the entire prosecution must be dismissed because of the invalidity of the indictment or information upon which this prosecution is based.
Among the recent decisions which have reaffirmed these jurisprudential holdings, dating from our earliest days as a state, are: State v. Spina, 261 La. 397, 259 So.2d 891 (1972); State v. Raby, 259 La. 909, 253 So.2d 370 (1971); State v. Butler, 259 La. 560, 250 So.2d 740 (1971). An important decision, State v. Straughan, 229 La. 1036, 87 So.2d 523 (1956), which invalidated as unconstitutional legislation designed to permit charging by name and article number of the offense, discusses the traditional reasons of fundamental safeguard of individual rights underlying this extremely technical line of jurisprudence.[1]
Under this jurisprudential interpretation of our constitutional article, the present indictment is fatally defective.
Armed robbery, La.R.S. 14:64, is found in a subpart of our criminal code entitled "Misappropriation by violence to the person." It is defined as "the theft of anything of value from the person of another". The crime against the person of another is regarded as so serious as to be punishable by penitentiary sentences of no less than five years and no more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. La.R.S. 14:64. Historically, the essential element of the crime is using force against the individual robbed and putting him in fear. LaFavre and Scott, Criminal Law 695-96 (1972); 2 Wharton's Criminal Law and Procedure, Sections 545, 553, 554 (Anderson ed., 1957).
The present indictment charged the accused with having "robbed City National Bank at 7415 Airline Highway, Baton Rouge." This does not charge the defendant with the crime of armed robbery under our law, for it charges him with robbing a building or an institution, not an individual. If acquitted on this charge, arguably he could be re-charged and tried again with robbing an individual in the building.
Further, if, in an effort to save this prosecution we hold this indictment valid (without overruling our traditional jurisprudence), we open up to prosecution for armed robbery, with its severe and mandatory penalties, much conduct the legislature never deemed severely punishable as armed robbery. For example, using force to open *736 a door to the bank when no individual is around and placed in fear, or using force to open a child's penny-bank surreptitiously stolen from a deserted park bench, or in fact the use of effort in any theft, even though no individual is put in fear and even though no violence or threat is used against any individual. All of the described conduct is punishable under proper indictment charging the crime defined by the legislature; but it cannot, without gravely distorting the legislative intent, be charged and punished as armed robbery.
The writer is of the view that this traditional interpretation of our constitutional provision is subject to re-evaluation and, indeed, such re-evaluation and overruling is overdue. In the light of modern criminal procedure, with its discovery by bill of particulars and additional discovery procedures now authorized and to be authorized by legislation and judicial interpretation, the overtechnical insistence upon a technically perfect indictment or information may no longer be essential to safeguard constitutional guarantees to individuals charged with crime and to afford constitutional protection against overreaching by overzealous prosecutors and law-enforcement officials.
My own view is that (a) where, as here, no objection is raised to the indictment or information, and (b) where the indictment gave actual notice to the defendant of the crime with which charged, and (c) where without unfairness by examination of the evidence the accused may be protected against further prosecution for the offense with which now charged, the technical invalidity of the indictment should be regarded as waived, if raised only after the conviction.
However, we cannot and should not, as a court of law, overlook long-settled principles of constitutional import just to affirm a particular conviction. Our duty may be to re-examine the entire body of jurisprudential interpretation, so firmly embodied in our law. Although the re-examination and overruling will not be an easy task,[2] until such is done we cannot ignore this body of settled law.
It does not do one day loftily to decry the undue technicalities of criminal procedure, when the state's case suffers by them, but the very next to invoke these same technicalities in their full rigor so as to deprive an accused of his fair chance for appellate review or to deny him the fair trial and the fair opportunity to raise issues of constitutional deprivation which a rational criminal law should afford. In the writer's opinion, a clear legislative and judicial look should be taken at all such technicalities, many of which survive from days of long ago, when the conditions which they were designed to serve have long since faded into obscurity and the outmoded rule yet lives on without real function or value except to trap the unwary lawyer in criminal prosecutions.
Criminal procedure should, like in fact our civil procedure does, serve the purpose only of advancing decision of issues on their merits, not afford the basis for decision on the happenstance that certain words were or were not used by lawyers in pleadings. As Article 5051 of our Louisiana Code of Civil Procedure provides, "* * * rules of procedure implement the substantive law and are not an end in themselves."
However important a value it may seem to be to affirm convictions on criminal appeal, I am unwilling to concede that to this value we must abdicate our judicial function. This court was not intended to operate as an organ of law enforcement by the state and merely to rubber-stamp convictions, whatever the legal error. We are created by our state constitution as an independent judicial tribunal, with a duty to *737 obey the standards and to apply the principles of this constitution and of the constitution of the United States, and to apply and enforce the laws of this state.
In criminal cases, we are neither for the state, nor against it. We are an impartial arbiter, with the constitutional and moral duty to interpret and apply the law fairly and evenly, whatever the person or party before the courtto reverse or affirm on law-principles, not on the prejudices we all must share against crime and in favor of law and order. He who in the name of law and order violates and ignores settled principles of law, with the pretence of observing it, does not serve the great ideal to which he pays mere lip-service.
I respectfully concur.
* * *

Appendix (to concurring opinion).
In its insistence that the indictment meet the constitutional requirement and state with particularity each and every element of the crime charged, this court has not hesitated to strike down indictments across the broad spectrum of criminal law, which, it felt, did not meet this test. See, e. g.: State v. Fontenot, 256 La. 12, 235 So.2d 75 (1970) (obscenitydidn't charge specific intent); State v. George, 247 La. 333, 170 So.2d 861 (1965) (conspiracy to commit criminal mischief); State v. Daye, 243 La. 725, 146 So.2d 786 (1962) ("B-drinking"); State v. McQueen, 230 La. 55, 87 So.2d 727 (1956) (gambling); State v. Kelley, 225 La. 495, 73 So.2d 437 (1954); State v. Roth, 224 La. 439, 69 So.2d 741 (1953) (obscenitybut see on retrial, 226 La. 1, 74 So.2d 392 (1954)); State v. Davis, 214 La. 885, 39 So.2d 164 (1949) (concealed dangerous weapon); State v. Quinn, 214 La. 368, 37 So.2d 821 (1948); State v. Varando, 208 La. 319, 23 So.2d 106 (1945) (gambling); State v. Fazzio, 208 La. 296, 23 So.2d 99 (1945) (burglary); State v. Toney, 205 La. 451, 17 So.2d 624 (1944) (criminal neglect); State v. Hebert, 205 La. 110, 17 So.2d 3 (1944) (indecent behavior with juveniles); State v. Morgan, 204 La. 499, 15 So.2d 866 (1943) (disturbing the peace); State v. Croal, 198 La. 820, 5 So.2d 16 (1941) (slot machine); State v. Verdin, 192 La. 275, 187 So. 666 (1939) (breaching the peace); State v. Gendusa, 190 La. 422, 182 So. 559 (1938) (breaking and entering); State v. Dean, 154 La. 671, 98 So. 82 (1923) (reckless driving); State v. Halaby, 148 La. 553, 87 So. 270 (1921) (fraudulent use of another's name); State v. Jacobs, 145 La. 898, 83 So. 183 (1919) (nonsupport); State v. Barnette, 138 La. 693, 70 So. 614 (1919) (keeping a "blind tiger"); State v. Thibodeaux, 136 La. 935, 67 So. 973 (1915) (pimping). See also: Ralston, Sufficiency of the Charge in an Indictment in Louisiana, 20 Tul.L.Rev. 220 (1945); Comment, Indictment FormsA Technical Loophole for the Accused, 6 La.L.Rev. 78 (1944).
In its high regard for this right, this court has held that an indictment which does not meet the required standards constitutes an error patent upon the face of the record, and will treat the matter ex proprio motu as reversible error. State v. George, 247 La. 333, 170 So.2d 861 (1965); State v. Daye, 243 La. 725, 146 So.2d 786 (1962).
In an effort to fully comply with this mandate, some indictments have "tracked" the language of the very statute which prohibited the conduct. However, even here this court has struck down these indictments where it felt the indictment was still vague, either because the listed crime could be committed in any one of several ways, or because the terms used in the indictment were vague. State v. Dozier, 258 La. 323, 246 So.2d 187 (1971) (resisting a police officer); State v. Hertzog, 241 La. 783, 131 So.2d 788 (1961) (term "vulgar" in indictment was vague); State v. Franks, 230 La. 465, 89 So.2d 39 (1956) (burglary); State v. Blanchard, 226 La. 1082, 78 So.2d 181 (1955) (illegal fishing device); State v. Holmes, 223 La. 397, 65 So.2d 890 (1957) (neglected to state which "felony" accused burglar intended to commit); State v. Hebert, 205 La. 110, 17 So. *738 2d 3 (1944), Noted, 19 Tul.L.Rev. 144 (1944); State v. Morgan, 204 La. 499, 15 So.2d 866 (1943) (disturbing the peace); State v. Kendrick, 203 La. 63, 13 So.2d 387 (1943) (misappropriation of property); State v. Celestin, 138 La. 407, 70 So. 342 (1915).
In an effort to simplify these technical requirements, the Louisiana legislature has provided for the "short form" indictment which permits the charging of certain enumerated crimes in a concise manner. La. C.Cr.P. Art. 465. This form of indictment has been held constitutional. State v. Nichols, 216 La. 622, 44 So.2d 318 (1950), Noted, 25 Tul.L.Rev. 121 (1950); State v. White, 172 La. 1045, 136 So. 47 (1931).
(The legislature also attempted to allow the charging of other crimes than those listed in Art. 465 by merely stating the name and number of the offense. This court originally upheld this amendment, but later declared the procedure unconstitutional. See, State v. Straughan, 229 La. 1036, 87 So.2d 523 (1956), Noted, 17 La.L. Rev. 232 and 406, overruling State v. Davis, 208 La. 954, 23 So.2d 801 (1945). See, also Official Comments (a) and (b) under La.C.Cr.P. Art. 465.)
However, the requirements of this article must be strictly adhered to, and this court has not hesitated to strike down short form indictments which did not follow the prescribed form. See, e. g., State v. Dozier, 258 La. 323, 246 So.2d 187 (1971) (aggravated assault); State v. Robinson, 143 La. 543, 78 So. 933 (1918); but see, State v. Johnson, 214 La. 535, 38 So.2d 162 (1948) which refused to stretch the rule to an absurd result.
A case which seems analogous to the instant case is State v. McDonald, 178 La. 612, 152 So. 308 (1934) wherein the burglary indictment recited that the accused entered "the American Hat Company, with the intent to commit larceny". This court found the indictment invalid because it omitted the averment that the defendants burglarized a "building" or "structure", an essential element of the crime of burglary.
NOTES
[1] Such figurative usage is not uncommon. For example, bench is often used to refer to the members of a court; house is often used to refer to a fraternal group of college students; bar is often used to refer to lawyers.
[2] The defendant filed no motion for a bill of particulars.
[1] The demand for strict compliance with the formal requirements for indictments developed in the common law as a reaction against the number and severity of crimes. (For instance, there were over 160 capital offenses in eighteenth century England.) The common law requirement that the offense charged contain every essential element of the crime charged, and this technical appreciation of the rule was early accepted by Louisiana courts. Slovenko, The Accusation in Louisiana Criminal Law, 32 Tul.L.Rev. 47 (1957).
[2] In an appendix to this opinion, the writer has noted some of the ramifications and the breadth of this body of jurisprudential interpretation of the article of our state constitution.