305 So.2d 514 (1974)
STATE of Louisiana, Appellee,
v.
Jiles Ray JAMES, Appellant.
No. 54874.
Supreme Court of Louisiana.
December 2, 1974.
*516 R. Harmon Drew, Jr., Drew, White, Drew & Drew, Minden, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Charles A. Marvin, Dist. Atty., James S. Harris, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of armed robbery, La.R.S. 14:64, and sentenced to twelve years at hard labor. On his appeal, he relies upon five perfected bills of exceptions.
The Validity of the Indictment
In its sua sponte inspection of the pleadings and proceedings, La.C.Cr.P. art. 920(2), this court noticed an issue concerning the validity of the indictment.[1] It charges that the defendant, on June 8th, 1972, "* * * while armed with a dangerous weapon, to-wit: a small caliber pistol, robbed the Pioneer Natural Gas Co of $438.00, contrary to L.R.S. 14:64 * * *." (Italics ours.)
Under our prior jurisprudence, this indictment is fatally defective. As specifically held by State v. Smith, 275 So.2d 733 (La.1973) and State v. Williams, 275 So.2d 738 (La.1973), in reliance upon earlier jurisprudence, the indictment does not charge a crime, because:
Armed robbery is a crime committed by violence against a person; thus, an essential element of the crime is that one or more individuals be the victim of the crime. Therefore, the naming of some building or corporation which suffered a loss by theft is not sufficient to charge a robbery of it, since such building or institution could not be put in fear of bodily harm and could not be the victim of the crime of armed robbery.
Under the decisions cited and the jurisprudence upon which it relies, a fatal defect in an indictment must be noticed by a court, even after conviction and even where no objection to the sufficiency of the indictment had ever been raised. In such circumstances, where a fatal defect is noticed even after conviction, the entire prosecution must be dismissed, since founded upon a defective indictment and since the foundation of a criminal prosecution is a valid indictment.
We have re-examined the constitutional resources relied upon for this stringent doctrine. We do not find their fundamental purpose of protecting an accused against state abuse is served by such an overtechnical construction.
We now conclude that, for reasons to be elaborated, where in fact an accused has been fairly informed of the charge against him by the indictment and has not been *517 prejudiced by surprise or lack of notice, the technical sufficiency of the indictment may not be questioned after conviction where, as here, no objection was raised to it prior to the verdict and where, without unfairness, the accused may be protected against further prosecution for any offense or offenses charged by it through examination of the pleadings and the evidence in the instant prosecution.
The jurisprudence is founded on the requirement of Article I, Section 10 of our state constitution that "the accused shall be informed of the nature and cause of the accusation against him". It was first found in our state constitution of 1879, see Article 8, and apparently was taken from the Sixth Amendment to the United States Constitution, the amendment being ratified in 1791.
As consistently interpreted in Louisiana, our courts have held that this constitutional provision requires that all the essential facts be found in the indictment or information and that any deficiency as to this requirement constitutes error patent on the face of the record which obliges the court to reverse and dismiss the prosecution. See: State v. Spina, 261 La. 397, 259 So. 2d 891 (1972); State v. Raby, 259 La. 909, 253 So.2d 370 (1971); State v. Butler, 259 La. 560, 250 So.2d 740 (1971); State v. Straughan, 229 La. 1036, 87 So.2d 523 (1956); and the many decisions cited in the appendix to the concurring opinion in State v. Smith, 275 So.2d 733, 734 at 737-739 (La.1973). This is so, although the defendant has not complained of the alleged deficiency at any time, although there is no real surprise or prejudice to the defendant, and although there is in actuality no doubt at all as to the offense with which the defendant is charged.
The reasons for this ultra-strict requirement are rooted in ancient conditions. First, at the time the requirement was formulated, the defendant had no real means other than through the indictment to learn before trial of the particulars or the offense for which he was to be tried. Second, the common law's development of the predecessor decisions for our state's jurisprudence was founded in a reaction against the number and severity of crimes. (For instance, there were over 160 capital crimes in eighteenth century England.) See Slovenko, The Accusation in Louisiana Criminal Law, 32 Tul.L.Rev. 47 (1957) and Orfield, Criminal Procedure from Arrest to Appeal 194-265 (1947).
In practically no modern American jurisdiction except Louisiana has the constitutional requirement been interpreted with such rigidity. Ralston, Sufficiency of the Charge in an Indictment in Louisiana, 20 Tul.L.Rev. 220 (1945). There is simply no functional reason for such interpretation under modern-day legal procedures and in the context of today's courts and conditions.
The defendant's right to know in advance of the trial sufficient particulars as to enable him to defend himself intelligently can be adequately protected by the bill of particulars and other discovery devices authorized and to be authorized. Similarly, modern technology and the common practice of transcribing the evidence in criminal trials, now protects him against further prosecution for the crime for which tried by an indictment which, although indicating the specific crime charged, might be considered insufficient if strictly construed. See, for instance, La.C.Cr.P. art. 843 (as amended by Act 207 of 1974), which requires recording of all proceedings, including the testimony at the trial.
We note that we do not have before us an indictment that does not, by any reasonable construction, charge the offense for which the defendant is convicted. Nor do we here have an offense charged so imprecisely or uncertainly that there is any real doubt, both for purposes of pre-trial notice as well as for subsequent double jeopardy purposes, of the crime-transaction against which the defendant had to defend.
*518 The indictment here charged the defendant with a robbery on a certain date and at a certain premises. In the lack of other specificity, the indictment (broadly construed) charges the robbery of the person or persons at the premises.
It would have been preferable to specify the particular individual or individuals robbed. The defendant by bill of particulars or other pre-trial motion could have so secured amendment or such information so as to limit the prosecution. Nor, even after the trial commenced, is a defendant without remedy if charged by a defective indictment. We do not by our present ruling intend to modify the jurisprudential and statutory pre-trial and at-trial remedies available to a defendant charged by a defective indictment.
Thus, if the defective indictment is questioned prior to or during the trial, and if its correction is refused, we do not mean that such error may not be urged upon appeal in the same manner as in the past. The thrust of today's ruling simply modifies prior jurisprudence that permitted, post-verdict, the questioning of the sufficiency of the indictment even though there was no actual lack of notice and no actual prejudice.
In the present case, no real surprise or lack of notice is shown or even claimed to have deprived the defendant of a lack of opportunity to plead, prepare, or try his defense. The only issue raised concerns the technical sufficiency of the indictment, if it is construed strictly, and this issue is first raised after the verdict.
We do not believe the essential constitutional purpose of protecting an accused against state abuse by vague indictment requires us, under modern conditions of pleading and practice, to permit a defendant after verdict to raise defects in an indictment, by which he was not truly prejudiced through a lack of notice and by which (see below) he is not truly subject to any jeopardy of further prosecution.
The Sixth Amendment to the United States Constitution, identically to Article I, Section 10, of our 1921 constitution, provides that an accused in a criminal proceeding shall "be informed of the nature and cause of the accusation". Identically to Article 464 of our Louisiana Code of Criminal Procedure (1966)our article is indeed expressly patterned thereupon, Federal Rule of Criminal Procedure 7(c) has since 1946 provided: "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."[2] The federal jurisprudence interpreting these identical constitutional and statute requirements has, as summarized by an outstanding treatise, reached the conclusion we reach today: "If the sufficiency of an indictment or information is not questioned at the trial, the pleading must be held sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted * * *." 1 Wright, Federal Practice and Procedure, Section 123 at pp. 225-26 (1969).
This principle of broad construction of an indictment (if it is first attacked after the verdict) in favor of its validity and of the verdict reached thereupon, is of course subject to reasonable limitation. Such a post-trial construction cannot cure real prejudice, or the substantial likelihood thereof, caused a defendant by what, strictly construed, could be considered a defective or vague indictment.[3] But no likelihood of such prejudice is here shown.
*519 The courts of this state have been reluctant to uphold vague indictments, even after conviction, because of the traditional fear that, to do so will erode the constitutional protection against double jeopardy. Here, for instance, if the defendant had been acquitted of the crime by a jury, under traditional notions he might have nevertheless been tried again for the offense, because the indictment itself, if strictly construed, charged no crime (one cannot rob a building or a corporation, because such cannot be put in fear of bodily harm) and (so the theory went) the criminal prosecution was void.
This may well have been a valid reason when, for post-trial purposes, the only record of the prosecution was the indictment, the verdict, the minutes, and the pleadings. However, now the evidence at the trial is commonly transcribed, and the 1974 amendment to Article 843 of our code of criminal procedure requires it to be recorded. The plea of former jeopardy is thus still available, although resort must be had to the note of evidence to show the identity of the offense.
Nevertheless, as noted by Scott, A Fair Trial for the AccusedFairness in Accusation of Crime, 41 Minn.L.Rev. 509, 516 (1957): "* * * there is no harm in that; it is well settled that extrinsic evidence may be used to show identity of offense under a double jeopardy plea. Surely fairness requires that the defendant be able to show in some relatively simple manner that the offense for which he is being prosecuted is the identical offense for which he was formerly tried. It does not require that he prove the identity solely by reference to the accusation and judgment in the former prosecution. Protection against successive prosecutions for the same offense, then, does not require of an accusation any more completeness than the notice function demands."
Furthermore, the broad construction of the indictment in favor of its validity against post-verdict attack likewise broadens the post-verdict protection of the defendant against further prosecution for any offense included within such post-verdict broad construction. Here, for instance, the defendant cannot plead prejudice because of the possibility of being put in further jeopardy for the robbery of other victims at the premises, had he been acquitted of this robbery, or even after the present conviction.
By validating the indictment by the broad construction that it charges the robbery of all potential victims at the premises on the date in question, we likewise recognize the doctrine that the broad construction of indictments in favor of their validity, at least in the absence of true lack of notice, correlatively insures also that the conviction or acquittal upon such an indictment bars further prosecution for any and all crimes included within such broad construction. This, indeed, is in accord with the holdings of the modern double-jeopardy jurisprudence that, where the gravamen of the second offense is essentially included within the offense for which first indicted and tried, the second prosecution is barred because of the former jeopardy. State ex rel. Wikberg v. Henderson, 292 So.2d 505 (La.1974); State v. Didier, 262 La. 364, 263 So.2d 322 (1972); State v. Bonfanti, 262 La. 153, 262 So.2d 504 (1972). Cf. also Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed. 2d 469 (1970).
Accordingly, for the reasons thus announced, we overrule such decisions as State v. Smith, 275 So.2d 733 (La.1973), State v. Williams, 275 So.2d 738 (La.1973), and State v. McDonald, 178 La. 612, 152 *520 So. 308 (1934). By strictly construing an indictment after the verdict, these decisions annulled a conviction upon appeal, even though there was no actual surprise or prejudice and even though, broadly construed, the indictment upon which convicted should have barred further prosecution for the transaction.
The Bills of Exceptions
We find no reversible merit to the bills of exceptions reserved, for the following reasons:
Bill No. 1: No abuse of discretion is shown by the trial court's denial of a motion to sequester prospective jurors during voir dire examination. State v. Robinson, 302 So.2d 270 (La.1974); State v. Ferdinand, 285 So.2d 530 (La.1973).
Bill No. 2: We cannot say the trial court abused its discretion by failing to sustain a challenge for cause to a prospective juror. The objection was based on the ground that the district attorney's law firm had done some notarial work for the venireman in the past. We are unwilling to disturb the trial court's considered evaluation, after further interrogation by it, that the venireman could serve as an impartial juror and that the relatively minor paperwork performed by the firm did not sufficiently create a relationship that might influence the juror's verdict. La.C.Cr.P. art. 797(2); State v. Richmond, 284 So.2d 317, 324-325 (La.1973); State v. Richmond, 278 So.2d 17, 20-21 (La.1973); State v. Hopper, 251 La. 77, 203 So.2d 222, 247 (1967).
Bill Nos. 3 and 4: The essential ground for these bills is that the state did not adequately bear its burden of proving an intelligent waiver by the defendant of his right to counsel at a line-up before the accused was formally charged with commission of the crime. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The trial court accepted the state's testimony in favor of the intelligent waiver. Such a factual determination, essentially based on credibility, is entitled to great weight and should not be disturbed on appeal unless shown to be clearly erroneous. State v. St. Andre, 263 La. 48, 267 So.2d 190 (1972). We find no such error. Furthermore, the defendant was not entitled to counsel at the line-up, which was held prior to a formal charge against him, see Kirby v. Illinois, cited above, and the lineup itself is not attacked as unfair.
Bill No. 5: On cross-examination of the defendant's alibi witness, a 28-year-old woman, the state first asked her (without objection) whether the father of her fifteen-year-old child was the father of her other two children. She replied that he was not. The district attorney then asked the witness whether the father of her twelve-year-old child was the father of her five-year-old child. The defendant then objected to this cross-examination as irrelevant to determining the witness's credibility.
The apparent basis of this question was to attack the witness's general credibility by showing a bad general reputation for moral character, as permitted by La.R.S. 15:490. However, La.R.S. 15:491 provides: "When general credibility is attacked, the inquiry must be limited to general reputation, and can not go into particular acts, vices or courses of conduct." The question was improper, and the objection that the question was irrelevant should therefor have been sustained. State v. Burch, 261 La. 3, 258 So.2d 851 (1972).
Nevertheless, we do not believe that reversible error was committed, under the present circumstances. The witness was permitted, over objection, to answer the question and to admit that the father of her twelve-year-old child was not the father of her five-year-old child. This simple answer could not, in our opinion, materially affect the jury's evaluation of her credibility, in view of her unobjected-to prior testimony of a differing parentage of her older child than of her younger two *521 children, as well as of her prior testimony that she was living with the accused and that he was her boyfriend. See La.C.Cr.P. art. 921.

Decree
For the reasons assigned, we affirm the conviction and sentence.
Affirmed.
MARCUS, J., concurs.
SUMMERS, J., concurs with opinion.
BARHAM, J., dissents with reasons.
SUMMERS, Justice (concurring).
In a newly adopted Constitution to be effective January 1, 1975, (La.Const. Art. I, ¶ 13 [1945]) the present constitutional provision (La.Const. Art. I, ¶ 10 [1921]) was readopted verbatim. Both provide: "In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him." This most recent expression of the will of the people is the State's paramount law. La.Const. Art. I, ¶ 13 (1975). It was made in the full knowledge of the long line of cases upholding the plain language of the present constitution; this makes the Court's effort to change that accepted meaning entirely unacceptable to me. By this decree a long line of decisions settling the meaning of the constitutional clause is overruled. Is the Constitution to be amended by this circuitous route? I cannot subscribe to that portion of the decision.
Nevertheless, I would uphold the conviction and agree to overrule State v. Smith, 275 So.2d 733 (La.1973) and State v. Williams, 275 So.2d 738 (La.1973), on their hypertechnical reading of the indictments in those cases as pointed out in the dissents of Mr. Justice Sanders (now Chief Justice) to those decisions. And for these reasons I would read the indictment in the instant case in a common sense manner to mean the personnel of the Pioneer Natural Gas Company.
I respectfully concur in the decree only.
BARHAM, Justice (dissenting).
I respectfully dissent.
In my opinion, the majority has effectively stripped this defendant, and all future defendants, of a fundamental constitutional rightthe right of a criminal defendant to be informed of the nature and the cause of the accusation against him by its sanctioning of broad post-conviction construction of indictments if the defendant has failed to object prior to verdict.
Among the essential elements of the crime of armed robbery is that the theft be "from the person of another or . . . in the immediate control of another, by use of force or intimidation * * *." La.R. S. 14:64. La.Code of Criminal Procedure Article 465, which sets forth the shortform indictments including that for armed robbery, requires the short-form indictment for armed robbery to name the "victim.'" The existence of a victim is necessary for the crime of armed robbery to occur because of the element of force or intimidation and because the statute specifically states that the theft must be from a person or from an area within the immediate control of a person.
"Person" as used in the statute defining robbery carries its lay definition, "a human being," and not its legal definition, "a legal entity." The definition of "person" in La. R.S. 14:2 is not meant to apply to the use of the word in La.R.S. 14:64. See Official Revision Comment under La.R.S. 14:2. Robbery is defined as a crime under the heading, "By Misappropriation with Violence to the Person." Armed robbery in Louisiana must consist of theft by force or intimidation while armed with a dangerous weapon from "a human being." The statute precisely says "from the person of another."
La.Constitution Article 1, § 10 provides:
"In all criminal prosecutions, the accused shall be informed of the nature and cause of the accusation against him; *522 * * *." (Emphasis here and elsewhere supplied).
This constitutional mandate puts an affirmative burden upon the State to supply an accused with the essential elements of the crime intended to be charged with sufficient particularity (1) to enable the defendant to adequately prepare for trial; (2) to allow the court to determine the propriety of evidence submitted at trial and to impose the correct punishment if there is a verdict of guilty; and (3) to afford protection from double jeopardy. See State v. Thomas, 260 La. 784, 257 So.2d 406, 408 (1972) and State v. Clark, 288 So.2d 612, 616 (La.1974). In State v. Clark, supra at 615, this Court stated:
"* * * The indictment or information is regarded as the foundation of the prosecution and as the safeguard of the accused against being prosecuted for a non-crime or, on the contrary, against conduct so vaguely described as not to bar subsequent prosecutions (i. e., to undergo further jeopardy) for the same offense."
In that case we held that the indictment is such a fundamental paper that its validity will not be upheld even if the facts are supplemented by a bill of particulars or if any vagueness is dispelled during the course of the trial.
I cannot agree with the majority's contention that the defendant's right to know in advance of the trial sufficient particulars to enable him to defend himself intelligently can be adequately protected by the bill of particulars and other discovery devices. Such a determination shifts the burden to the defendant; he must demand to know the nature and the cause of the charges against him through the vehicles of the motion for a bill of particulars and the other limited discovery devices available to him. This is in direct contravention of the constitutional mandate that the accused "shall be informed." In State v. Straughan, 229 La. 1036, 87 So.2d 523, 530 (1956), this Court distinguished the "right to demand" the nature and cause of the accusation from the guarantee that the accused "will be informed" of the nature and cause. This very valid distinction has been veritably glossed over by the majority's opinion in this case.
Further, in State v. Spina, 261 La. 397, 259 So.2d 891, 893 (1972), addressing itself to the issue of whether a bill of particulars can amend or validate an otherwise invalid or insufficient information or indictment, this Court stated:
"If a defendant desires to be advised of the specific acts of which he is accused and applies for and obtains a bill of particulars, he does so on his own behalf and for his sole benefit. He does not do this to correct an invalid indictment or bill of information for the State. He only seeks additional information to more properly prepare his defense. La. Code Crim.Proc. arts. 484 and 485."
The holding in Spina was that a bill of particulars is not sufficient to satisfy the constitutional requirement that the accused be informed of the nature and cause of the accusation against him. In support of that conclusion the Court quoted the following excerpt, also applicable to the case at bar, from State v. Bienvenu, 207 La. 859, 22 So.2d 196 (1945):
". . . [N]evertheless the fact remains that defendant is not being prosecuted on the bills of particulars, but solely on the informations. A bill of particulars can never take a criminal prosecution out of the statute on which the indictment or information is based.
"The sole office of a bill of particulars is to give the adverse party information which the pleadings by reason of their generality do not give and to compel the State to observe certain limitations in offering evidence. A bill of particulars cannot change the offense charged nor in any way aid an indictment or information fundamentally bad."
Rejection of the indictment in this case would not necessarily result in the defendant going unprosecuted because the possibility still exists that he could be charged with the armed robbery of any of the people who were present in the building *523 named and from whom anything of value was taken by use of force or intimidation while the alleged robber was armed with a dangerous weapon.
In my opinion, the legislative description of the crime of armed robbery and the provisions of our constitution make the result obtained in State v. Smith, 275 So.2d 733 (La.1973) and State v. Williams, 275 So.2d 738 (La.1973), both of which are overruled by the majority opinion, and the quashing of the indictment in the case at bar the only possible legal result as well as the most rational and just result. The preciseness of the indictment is of the utmost importance in satisfying both constitutional provisions, i. e., notice of the specific crime for the purpose of defense, and a definitive statement of the offense for protection against double jeopardy.
For these reasons, it is my opinion that the indictment in question failed to charge a crime punishable under Louisiana law and should have been quashed, and defendant's conviction and sentence should have been set aside.
I must dissent.
NOTES
[1] We use "indictment" here in the generic sense as including a charge either by grand jury indictment or by (bill of) information. La.C.Cr.P. arts. 382-384, 934(6). In the present instance, the defendant was charged by an "information", i. e., "a written accusation of crime made by the district attorney and signed by him". La.C.Cr.P. art. 384. The information is commonly referred to as a "bill of information".
[2] Compare with the more explicit and seemingly more stringent requirements of Article 227 of the Louisiana Code of Criminal Procedure of 1928, La.R.S. 15:227 (1950), repealed by the 1966 code: "The indictment must state every fact and circumstance necessary to constitute an offense * * *."
[3] See American Law Institute Model Code of Criminal Procedure, Section 184(4) (1930), which prohibits post-verdict attack upon the sufficiency of an indictment "unless it is affirmatively shown that the defendant was in fact prejudiced thereby in his defense upon the merits." See also the leading article on the issue, recommending reform of the overly strict indictment requirements of statute and jurisprudence, but without depriving a defendant of a remedy if there was a substantial possibility he was misled by the defective indictment. Scott, A Fair Trial for the AccusedFairness in Accusation of Crime, 41 Minn.L.Rev. 409, 545-46 (1957).